# AFFIDAVIT

I, BRYAN DYKE, having been duly sworn, depose and state:

1. I am a Task Force Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed since March 2011 in the Burlington, Vermont Field Office. I am also a United States Border Patrol Agent, and have served in that position since September 2006. I have participated in numerous criminal investigations associated with violations of the federal firearms and controlled substances laws. These investigations have included the writing and execution of numerous federal search warrants, criminal complaints, and arrest warrants associated with violations of federal firearms laws. I have received training in the enforcement of federal laws at the United States Border Patrol Academy in Artesia, New Mexico. I have received additional training and experience in the enforcement of federal firearms laws during my tenure as an ATF Task Force Agent.

2. I set forth the following facts as probable cause to believe that Eric PACK has committed the offense of knowingly distributing cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). The facts set forth below are either known to me personally or have been related to me by persons having direct knowledge of the events giving rise to this Criminal Complaint. This affidavit is intended to set forth probable cause and does not include every fact known to law enforcement about the events described below.

3. In or about October 2012, Detective Richard Volp of the Burlington Police Department ("BPD") began working with a confidential informant ("CI") for the purpose of conducting controlled purchases of narcotics in the Burlington area. The CI has several prior convictions, including cocaine possession, false pretenses, retail theft, simple assault, petit

larceny, and false information to a police officer. Detective Volp has indicated that BPD has used the CI in other investigations, and the information provided by the CI has resulted in the successful prosecution of other individuals in drug-related cases. Detective Volp has further advised me that the CI proved to be reliable during its cooperation with BPD in this matter. At the time that the CI began working with BPD, the CI had a pending state charge for driving on a suspended license ("DLS"). In anticipation of receiving consideration for the DLS charge, the CI agreed to perform controlled purchases of narcotics from individuals in the Burlington area. In or about October 2012, the CI identified PACK, among others, as an individual from whom it could purchase cocaine base, also known as crack cocaine. The CI indicated that PACK routinely sold crack cocaine in the Burlington area, and that the CI had purchased crack cocaine from PACK on previous occasions.

  4. Based on my review of PACK's criminal history, I know that he has several convictions related to drug possession, including a 1995 misdemeanor conviction for criminal possession of a controlled substance in the seventh degree (New York), 1997 misdemeanor conviction for cocaine possession, a 2012 misdemeanor conviction for sale of a non-controlled substance as a controlled substance, and a 2012 misdemeanor conviction for possession of a depressant/stimulant/narcotic.

  5. During the week of March 3, 2013, the CI advised Detective Volp that PACK had crack cocaine available for sale, and that the CI was able to purchase from PACK. According to Detective Volp, the CI contacted PACK by telephone and arranged to meet PACK to purchase crack cocaine at a location in Chittenden County. Detective Volp reviewed the call history on

the CI's phone, and confirmed that the CI had contacted an individual listed on the phone as "ERICP" at 777-6376 shortly before the controlled purchase.

6. The information contained in this paragraph is based on my consultation with Detective Volp and my review of Detective Volp's reports detailing the controlled purchase with PACK on March 6, 2013. Prior to the CI's meeting with PACK, Detective Volp searched the CI and did not find any drugs, drug paraphernalia, or large sums of currency. Detective Volp provided the CI with currency to purchase the crack cocaine. Detective Volp and other members of BPD transported the CI to the meet location. Law enforcement maintained visual surveillance of the CI from the time the CI left the vehicle until the time the CI arrived at the location for the controlled purchase. The location for the controlled purchase was a hotel room at Handy Suites in Colchester. Law enforcement observed the CI enter the hotel. The CI returned to the meet location several minutes later and turned over to law enforcement a quantity of crack cocaine. Law enforcement again searched the CI and did not find any drugs, drug paraphernalia, or large sums of currency. Subsequent testing by law enforcement confirmed that the substance received from the CI was positive for cocaine base. The cocaine base weighed approximately 2 grams. This weight included packaging.

7. After the controlled purchase was completed, Detective Volp received a sworn statement from the CI concerning the details of the controlled purchase with PACK. I have listened to the audio recording of the sworn statement. The CI stated that he provided PACK with $200 in currency received from BPD and received crack cocaine from PACK. The CI also stated that, upon entering PACK's hotel room, PACK directed the CI to go into the bathroom because there were "undercover cops" in the building. The CI was wearing an audio recording

3

device during the controlled purchase. I have listened to the recording of the transaction. The recording contains audio of a man ordering the CI to step into the bathroom, followed by discussion of "undercover" law enforcement.

8. On March 21, 2013, I interviewed PACK at Northwest Correctional Facility in Swanton, Vermont. PACK was in custody at that time in connection with an unrelated state offense. During this interview, PACK stated that he has sold illegal controlled substances, including crack and powder cocaine. PACK further stated that he sold a couple of grams of cocaine per week during his recent stay at Handy Suites.

Based on the foregoing, I believe that there is probable cause to believe that on March 6, 2013, ERIC PACK knowingly distributed cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

Dated at Burlington, in the District of Vermont, this 14th day of June 2013.

Bryan Dyke
Task Force Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed before me this 14th day of June 2013.

Hon. John M. Conroy
United States Magistrate Judge